# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FIRST AMERICAN BANK, as TRUSTEE UNDER AGREEMENT DATED AUGUST 19, 2009 AND KNOWN AS TRUST NO. 1-09-124, and FIRST AMERICAN BANK,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHHAMPTON GROUP LTD.,<br><br>Defendant. | Case No. 23-cv-01168 |

## COMPLAINT

Plaintiffs, FIRST AMERICAN BANK, not individually, but as Trustee Under Agreement Dated August 19, 2009 and Known as Trust No. 1-09-124, and FIRST AMERICAN BANK (collectively, the "Bank"), by its undersigned attorneys, complains of Defendant NORTHHAMPTON GROUP LTD., ("Northhampton"), and states as follows:

### NATURE OF THE ACTION

1. This is a collection action for breach of an indemnity obligation. The amount due exceeds $600,000.

2. The Bank sold a development "as is" to Northampton in 2014, and obtained a right to indemnity if later sued over its condition. The Bank was then subject to six years of baseless litigation about alleged construction defects at the development. This litigation was dismissed with prejudice on February 7, 2023. The bill is now due for Northhampton to make good on its obligation to indemnify the Bank for its defense. Northhampton has refused.

DM2\17307850.3

**PARTIES**

3. First American Bank, as Trustee under that certain Trust Agreement dated August 19, 2009 and known as Trust No. 1-09-124, is a banking corporation incorporated under the laws of the State of Illinois with authority to act as a land trustee in the State of Illinois.

4. First American Bank itself is a banking corporation incorporated under the laws of the State of Illinois with its principal place of business in Cook County, Illinois.

5. Northhampton Group Ltd. is a corporation incorporated under the laws of the Province of Manitoba, Canada, with its principal place of business in Winnipeg, Manitoba, Canada, and authorized to transact business in the State of Illinois.

6. Northhampton is solely owned by Ken Campbell, a Canadian investor. He has also long been the President of the Fountain Square on the River Condominium Association, Ltd. ("Fountain Square Association"). He controls its Board.

**JURISDICTION AND VENUE**

7. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are of diverse citizenship, and the amount in controversy exceeds $75,000.

8. Venue is proper in the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1391 because Defendants do business in this district, and because a substantial part of the events giving rise to the claims occurred in this district.

**FOUNTAIN SQUARE**

9. The Bank financed the construction of a condominium development in Elgin known as Fountain Square on the River ("Fountain Square"). There was a builder (Novak Construction

Company), as well as a developer (RSC-Elgin, LLC and its individual owners), responsible for the construction of the development. The Bank is a bank, not a builder or a developer.

10. As a result of the 2008 recession, the Bank involuntarily came into possession of Fountain Square via Deed in Lieu of Foreclosure.

### 2014: THE BANK SELLS FOUNTAIN SQUARE TO NORTHHAMPTON "AS IS", AND NORTHHAMPTON AGREES TO INDEMNIFY THE BANK FOR CLAIMS ABOUT ITS PREMISES

11. On October 10, 2014, the Bank and Northhampton entered into a Contract of Sale whereby the Bank agreed to sell and convey to Northhampton, as purchaser, fifty-eight (58) residential condominium units, two (2) commercial condominium units, and seventy-two (72) parking units in the Fountain Square on the River Condominiums, 50 S. Grove Avenue, Elgin, Illinois 60102. A true and correct copy of the Contract is attached hereto as **Exhibit 1**.

12. Pursuant to Paragraph 14 of the Contract of Sale, Northhampton purchased the Fountain Square on the River Condominiums property "as is" and represented that it was "relying solely on its own examination and inspections of the premises and not on any materials or information . . . furnished or statements or representations made by [First American Trustee] or any [of its] agents or representatives."

13. Pursuant to Paragraph 29, Northhampton agreed to "indemnify and hold Seller and every individual and entity affiliated with Seller and all of their respective officers, directors…, employees, [and] agents … harmless from any liability, loss, claim, cause of action, cost, damage or expense (including, but not limited to, attorneys' fees and costs) that Seller and Seller's affiliates may sustain or incur by reason of or in connection with the Premises and … (b) resulting from or in any way connected with the environmental condition of the Premises, or (c) resulting from in any way connected with the physical, financial, compliance, or other conditions of the Premises, including, without limitation, matters referred to in Paragraph 14 above."

**2017: BASELESS LITIGATION IS BROUGHT AGAINST THE BANK OVER WATER-DAMAGE ISSUES AT FOUNTAIN SQUARE**

14. Northhampton's owner Ken Campbell also became the President of the Fountain Square on the River Condominium Association, Ltd. ("Fountain Square Association") in 2014 and remains so to this day. In this capacity, he instigated litigation against the Bank through Fountain Square Association over the conditions at Fountain Square in 2017 – in particular, over alleged water leaks. The Fountain Square Association also sued the builder (Novak Construction) and the developer (RSC) over alleged construction defects. A true and correct copy of the Second Amended Complaint ("Complaint") is attached as **Exhibit 2**.

15. The Fountain Square Association's litigation sought potentially millions in damages from the Bank, including claims for punitive damages. The Fountain Square Association sought a jury trial over incendiary allegations based on alleged water-damage issues.

16. The litigation lasted six years in Kane County state court.

17. During the litigation, the Bank advised Northhampton that the Bank expected to be indemnified for its attorneys' fees, costs and related damages as a result of having to defend itself against the baseless allegations. Northhampton resisted its indemnity obligation on the basis of a putative public policy argument (that there can be no indemnity for fraud), and succeeded in having the Bank's third-party complaint against Northhampton dismissed without prejudice.

18. On February 7, 2023, all of the claims in the litigation against the Bank and its officers and related parties were dismissed with prejudice by Judge Robert K. Villa in the Kane County Circuit Court (Sixteenth Judicial Circuit). There had been extensive briefing after depositions and documents produced by the parties and a third-party engineering firm. There had also been a two-hour oral argument before Judge Villa.

19. After a thorough review of relevant documents and witness testimony, the Court found no evidence of fraud against the Bank and its officers, and found that they had breached no fiduciary duty. A true and correct copy of the Dismissal Order is attached as **Exhibit 3**. *See id*., at 15 ("the Court finds no evidence in the record to support Plaintiff's fraud claims"); *id*. at 13 ("the Court cannot find that there was a deceptive act or practice by the Defendants").

**2023: THE BANK DEMANDS INDEMNITY FOR ITS DEFENSE COSTS FROM THE FOUNTAIN SQUARE LITIGATION, AND NORTHHAMPTON REFUSES**

20. On February 10, 2023, the Bank requested that Northhampton advise the Bank within seven days whether it would honor its contractual obligation to indemnify. A true and correct copy of this request is attached as **Exhibit 4**.

21. Northhampton's counsel acknowledged receipt, but did not respond in substance.

**COUNT I: BREACH OF CONTRACT**

22. The Bank incorporates by reference the allegations in the above paragraphs.

23. The Contract of Sale is an enforceable contract.

24. The Bank fully performed all of its obligations under the Contract of Sale, and satisfied all conditions precedent to its enforcement.

25. Northhampton has failed to indemnify the Bank under the Contract of Sale for the fees and costs of defense connected to the environmental condition of Fountain Square, and is thus in breach.

26. The Bank has been damaged by Northhampton's breach of contract in an amount that exceeds $600,000.00 in fees and costs, together with pre-judgment and post-judgment interest, costs and attorneys' fees.

27. The Bank is further damaged by having to incur fees and costs to prosecute this collection action.

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter judgment in their favor and against Northhampton in an amount that exceeds $600,000.00 (the amount to be proven up), plus pre-judgment and post-judgment interest, costs and attorneys' fees (including for enforcement); and

B. Grant such other and further relief as may be just and fitting under the circumstances.

February 24, 2023

Respectfully Submitted,

FIRST AMERICAN BANK, as Trustee Under Agreement Dated August 19, 2009 and Known as Trust No. 1-09-124, and FIRST AMERICAN BANK

By: /s/ Ronald M. Lepinskas
      One of Their Attorneys

Ronald M. Lepinskas (#6216428)
Zev Grumet-Morris (#6335966)
DUANE MORRIS, LLP
190 South LaSalle, Suite 3600
Chicago, IL 60603
(312) 499-6700
rmlepinskas@duanemorris.com
ZGrumetMorris@duanemorris.com