UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FIRST AMERICAN BANK,

        Plaintiff and
        Counter-Defendant,

      v.

NORTHAMPTON GROUP LTD.,

        Defendant and
        Counter-Plaintiff.

No. 23 CV 1168

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

This dispute arises from years-long litigation in state court over a condominium property that was plagued by water leaks. That litigation finally concluded with First American Bank, who sold the property to Northampton Group, prevailing over the condominium association's claims for fraud and breach of fiduciary duty. While that case remained pending on appeal, the Bank brought suit in this court against Northampton seeking indemnification for the costs of defending the state-court lawsuit. Northampton brings a counterclaim against the Bank for breach of contract, and the Bank moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons discussed below, that motion is granted.

## I.    Legal Standard

Federal Rule of Civil Procedure 12(c) permits any party to move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A party can move under Rule 12(c) "to dispose of the case on the basis of the underlying substantive merits" or to raise a Rule 12(b) defense. *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 518

(7th Cir. 2025) (quoting *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)). When a moving party challenges the sufficiency of a complaint under Rule 12(c), the same plausibility standard under Rule 12(b)(6) applies. *Id.* at 518–19. When ruling on a Rule 12(c) motion, I may consider the pleadings, any exhibits attached to the complaint, and matters of public record that are not subject to reasonable dispute. *See id. and South Branch LLC v. Commonwealth Edison Co.*, 46 F.4th 646, 648 (7th Cir. 2022).

## II. Background

I assume familiarity with the earlier order denying Northampton's motion to dismiss. *See First Am. Bank v. Northampton Grp. Ltd.*, No. 23-CV-1168, 2024 WL 1302788 (N.D. Ill. Mar. 27, 2024). First American Bank sold the Fountain Square on the River Condominiums to Northampton Group in 2014. [1] ¶ 11.[1] Three years later, the Fountain Square on the River Condominium Association brought claims for fraud and breach of fiduciary duty against the Bank, several of its board members, the developer, and the general contractor in the Circuit Court of Kane County. [52-2]. The Bank filed a third-party complaint against Northampton seeking indemnification under the contract for sale. [25-1]. The trial court dismissed the Bank's complaint without prejudice, to be maintained until "the whole thing is final." [17-2] at 17. The

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. This court has jurisdiction because First American Bank, as trustee, and First American Bank are citizens of Illinois, Northampton Group is a citizen of Canada, and the amount in controversy exceeds $75,000. [1] ¶¶ 3–7, 26–27; 28 U.S.C. § 1332(a). The parties apply Illinois law. *See generally* [52], [60], [61]; *Paulsen v. Abbott Lab'ys*, 39 F.4th 473, 477 (7th Cir. 2022) (citations omitted). For sake of simplicity, I refer to First American Bank as one entity. [1] ¶¶ 3–4.

state court ultimately dismissed the underlying fraud claims with prejudice, [1-3], and the Association appealed the judgment, [17-3].

The litigation in this court concerns the Bank's breach of contract claim against Northampton to enforce the indemnification clause. [1]. After I denied Northampton's motion to dismiss, Northampton answered the complaint and filed a counterclaim for breach of contract against the Bank. [32]. Northampton alleges that the Bank breached the contract for sale by failing to disclose information related to defects that caused the water leaks. [32] ¶¶ 117–29. Northampton alleges that Bank-appointed members of the Condominium Association "facilitated the adoption of assessments and reserves they knew (or should have known) would be inadequate" and "knowingly enabled [the Bank] to present financial statements on the rental operations… which contained no provision for major work to permanently correct the causes of the water infiltration problems." [32] ¶ 117. These financial statements and the failure to disclose "latent defects" induced Northampton to purchase condominium units at a higher price. [32] ¶ 118. Northampton alleges that the Bank was obligated to disclose certain documents containing information related to: (1) defects; (2) "the Bank's band-aid approach to correcting the defects"; (3) constructions reports; or (4) "anticipated costs of properly correcting the causes of the water filtration problems." [32] ¶ 118. Northampton requested "structural and engineering reports" as part of its due diligence process but only received an engineering report from a third-party firm dated December 22, 2009, indicating that "to the best of [the firm's] knowledge, all active leaks have been addressed." [32] ¶ 122. Northampton claims that the Bank

failed to disclose at least eight other engineering reports (all predating the December 22, 2009 report) dealing with leakage issues; the Bank and its board members were the only people with knowledge of "latent defects" and the information in those third-party reports; and the Bank concealed these reports to induce Northampton's purchase. [32] ¶ 120–23.

After attempting settlement, the parties requested a stay of the proceedings pending the outcome of the appeal. [46]. I granted the stay. [47]. The appellate court has since affirmed the trial court's dismissal of the condominium association's claims for fraud and breach of fiduciary duty against the Bank, and the Illinois Supreme Court denied the Association's petition for leave to appeal. *See Fountain Square on the River Condo. Ass'n, Ltd. v. First Am. Bank*, 2024 IL App (2d) 230076-U, *appeal denied*, No. 131333, 2025 WL 951934 (Ill. Mar. 26, 2025).

## III.  Analysis

First American Bank argues that the doctrine of res judicata bars Northampton's counterclaim for breach of contract. [52] at 5, 15–18. In the alternative, the Bank argues that (1) Northampton's breach of contract counterclaim rests on allegations of fraud and concealment that do not satisfy Rule 9(b)'s pleading requirements and (2) specific terms in the contract for sale preclude reliance on any representations or omissions by the Bank. [52] at 6, 9–15.

Illinois law applies. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980). I am required to give the same preclusive effect to a state court judgment as any Illinois court rendering judgment would grant it. 28 U.S.C. § 1738; *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). Claim preclusion, or res judicata, promotes judicial

economy by barring "multiple lawsuits between the same parties where the facts and issues are the same." *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 44; *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 319 (1998). Claim preclusion requires: (1) a final judgment on the merits; (2) an identity of cause of action; and (3) identity of the parties or their privities. *Lutkauskas*, 2015 IL 117090, ¶ 44. If those requirements are satisfied, a party is barred from relitigating matters actually decided in the first proceeding or matters that could have been decided in the first proceeding. *Id.*

The finality requirement is satisfied. The state court's judgment dismissing the Association's fraud claims against the Bank constitutes a final judgment on the merits. *See Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 24 (a final judgment "terminate[s] the litigation and fix[es] absolutely the parties' rights, leaving only enforcement of the judgment"). The appellate court affirmed the dismissal, and the Supreme Court denied the petition for leave to appeal. *See Fountain Square on the River Condo. Ass'n, Ltd. v. First Am. Bank*, 2024 IL App (2d) 230076-U, *appeal denied*, No. 131333, 2025 WL 951934 (Ill. Mar. 26, 2025); *Dookeran v. Cnty. of Cook*, 2013 IL App (1st) 111095, ¶ 18 (a judgment becomes final when the possibility of appellate review has been exhausted).

Under Illinois law, different claims are considered the same cause of action "if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc.*, 184 Ill.2d at 311. "[T]he dismissal of a single theory of recovery against a particular defendant operates as a final adjudication of all claims based on other theories of recovery that could have been

brought as part of the initial action, as long as they arise from the same core of operative facts." *Lutkauskas*, 2015 IL 117090, ¶ 47. Relevant factors include "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *River Park*, 184 Ill.2d at 312 (quoting Restatement (Second) of Judgments § 24 (1982)).

Northampton acknowledges that its counterclaim involves building defects at issue in the state court lawsuit, but it says that the two cases involve different transactions, time periods, and parties. [60] at 7. Northampton distinguishes the state-court lawsuit as involving claims from 2009 and 2010 that the Bank and its board members failed to "properly correct, disclose and budget for the correction of the defects that caused the water penetration problems." In contrast, Northampton asserts that its counterclaim here involves the Bank's failure to provide documents that Northampton was entitled to receive.[2] [60] at 11, 13–16.

Northampton's allegations for breach of contract in this case significantly overlap with the Association's allegations of fraud in the state-court litigation. *See River Park*, 184 Ill.2d at 314 (noting that the "most telling indication of identity of cause of action" was the parallels between factual allegations in the state complaint and federal complaint). Northampton chiefly relies on allegations of third-party

---

[2] Northampton admits that paragraph 118 of the counterclaim mistakenly alleges that the Bank was required to produce documents under the Illinois Condominium Act. [60] at 11 n.3. The counterclaim also fails to allege specific contractual provisions, but Northampton asserts in its response brief that it was entitled to documents under Sections 22(a) and 27(a) of contract. [60] at 11–13. Section 22 covers "Condominium Disclosures and Other Matters." [52-1] at 17. Section 27 covers the "Inspection Period and Right of Entry." [52-1] at 20–21.

engineering reports from 2009 and the Bank's knowledge about defects. [32] ¶ 122. Northampton says that its counterclaim in this case arises from a contractual right to disclosures whereas the Association's claim against the Bank arose in part from the fiduciary duty owed by members of a board of a condominium association to unit owners. [60] at 4–5, 8. The counterclaim may be stylized as a breach of contract, but it rests on allegations that the Bank and its officers "were the only Condominium Association persons with knowledge of the latent defects and knowledge of [third-party engineering] reports advising that work done in 2009 would not provide a permanent solution the water infiltration problems." [32] ¶ 120. It also rests on the allegation that the eight undisclosed engineering reports revealed "latent defects" and that the Bank's "incomplete disclosure" amounted to fraudulent concealment. [32] ¶ 123. Those engineering reports were at issue in the state-court litigation. *See* [1-3] at 7–11. The court considered the engineering firm's final report dated December 22, 2009, that "all active leaks have been addressed." [1-3] at 9. It also addressed the Association's claim that the Bank "withheld information to hide [its] 'band-aid' approach" for an independent inspection in 2010 evaluating property conditions and estimating anticipated costs. [1-3] at 11–12. The court also addressed the "as-is" provision in the 2014 contract for sale:

> Northampton agreed to purchase the property in its present condition. Furthermore, the provision stated Northampton relied on its own examination and inspections of the property and ***not any of FAB's materials or information***… FAB made no warranty or representation, express or implied regarding the property and disclaimed any warranty, guaranty or representation concerning the nature and condition of the property. Additionally, Northampton "releases, discharges and forever acquits [FAB]…

> all of their respective officers, directors, shareholders, employees, agents…
> from all demands, claims, causes of actions, liabilities..."

[1-3] at 15 (emphasis in original). Although an "as-is" provision does not shield a seller for liability for fraud, the court found that the contractual provision "further defeats [the Association's] claims" regarding the Bank's misrepresentations. [1-3] at 16.

Northampton relies on a different theory relief, but its counterclaim implicates the same core facts at issue in the state-court litigation: what the engineering reports from 2009 revealed about the status of water leaks, the Bank's (or board members') knowledge about the information in those reports, and the Bank's withholding of knowledge related to defects. [32] ¶¶ 118–22. "[S]imply alleging a new theory of recovery is insufficient to assert a different cause of action, where multiple theories of recovery are predicated on the same core of operative facts." *Lutkauskas*, 2015 IL 117090, ¶ 47; *see also Chicago Bd. of Educ. v. Chicago Tchrs. Union, Loc. No. 1, IFT-AFT, AFL-CIO*, 2024 IL App (1st) 240613, ¶ 29 ("[T]he transactional approach is concerned with foreclosing subsequent claims arising out of the same *transaction*, even if the claims are substantively different."). Northampton's argument on the different time periods and transactions would be on firmer footing if the state-court litigation didn't also implicate the 2014 sale. But the Association raised allegations about the Bank's concealment of defects during the sale of the property to Northampton. *See Fountain Square on the River Condo. Ass'n*, 2024 IL App (2d) 230076-U, ¶ 27 ("Plaintiff alleged that defendants concealed the defects in order to profit from the sale of the building to Northhampton [*sic*] by withholding the existence and extent of the defects."). Because Northampton's counterclaim involves

8

the same core of operative facts as the state-court litigation, identity of cause of action is satisfied.

The condominium association brought the state-court suit, and the counterclaim here is by Northampton. Privity exists between parties "who adequately represent the same legal interests." *People ex rel. Burris v. Progressive Land Devs., Inc.*, 151 Ill.2d 285, 296 (1992) (citation omitted). "[T]he identity of the interest controls, not the nominal identity of the parties." *State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill.App.3d 548, 559 (1st Dist. 2009). "There is no generally prevailing definition of privity," so the inquiry "requires careful consideration of the circumstances of each case." *Apollo Real Est. Inv. Fund, IV, L.P. v. Gelber*, 403 Ill.App.3d 179, 190 (1st Dist. 2010) (internal quotation marks omitted). "A nonparty may be bound under privity if his interests are so closely aligned to those of a party that the party is the virtual representative of the nonparty." *City of Rockford v. Unit Six of Policemen's Benevolent & Protective Ass'n of Illinois*, 362 Ill.App.3d 556, 563 (2d Dist. 2005).

It's undisputed that Northampton's sole owner is Ken Campbell and that Campbell also served as the President of the Fountain Square on the River Condominium Association since 2014. [32] ¶ 6. Because Campbell became majority owner of the condominium units and President of the Association upon the Bank's sale of the property to Northampton, the Bank argues that this link is sufficient to establish privity between the Association and Northampton. [52] at 17. Northampton maintains that it does not have the same legal interests as the Association because

the Association was not a party to the 2014 sale and therefore lacked standing to bring a breach of contract claim. [60] at 8–9.

Standing and privity are distinct concepts. *Ovnik v. Podolskey*, 2017 IL App (1st) 162987, ¶ 29. "Standing refers to whether a litigant is entitled to have the court decide the merits of a dispute or a particular issue and requires some injury in fact to a legally recognized interest. Privity, in turn, exists when parties adequately represent the same legal interests, irrespective of their nominal identities." *Id.* (internal quotation marks and citations omitted). Northampton relies on *Mount Mansfield Insurance Group*, 372 Ill.App.3d 388 (1st Dist. 2007), to argue that the Association's lack of standing to bring a breach of contract claim in the state-court lawsuit precludes a finding of privity with Northampton. [60] at 8. The court in *Mount Mansfield* stated that, "where a party has no standing to bring a cause of action on behalf of another party, either individually or derivatively, it also must be said to lack privity with the other party because it cannot adequately represent the other party's legal interests." 372 Ill.App.3d at 394. But that case arose from the specific context of shareholder derivative suits. *Id.* at 393–94. The court noted "[t]he notions of standing and privity are interrelated here" because shareholders in the previous action only pursued individual rather than derivative rights and so could not have adequately represented the legal interests of the non-party corporate subsidiary in a subsequent action. *Id.* at 394. *Mount Mansfield* does not set a categorical rule on standing and privity. The Association may have lacked standing to bring a breach of contract claim against the Bank, but it had standing to pursue monetary relief for injury based on

the same operative facts giving rise to Northampton's alleged injury—the Bank's knowledge and concealment of property defects. In applying res judicata, Illinois courts focus on the underlying facts rather than specific claims for relief. *See Progressive Land Devs., Inc.,* 151 Ill.2d at 295 ("A cause of action is defined by the facts which give the plaintiff a right to relief."); *Lutkauskas,* 2015 IL 117090, ¶ 51 (privity satisfied even though plaintiff "asserted different theories of recovery, [because] the conduct that formed the basis for his claims was the same as that underlying the original plaintiffs' claims, and he sought the same relief."). The Association may not have had standing to pursue an *identical* claim as Northampton, but that does not defeat a finding of privity.

"Corporations and their officers, directors, and shareholders are in a category of relationships that may establish privity, for purposes of *res judicata* or collateral estoppel." *Apollo*, 403 Ill.App.3d at 191. "Where a closely held corporation is a party to litigation, those stockholders who are in complete control of the corporation are, in effect, in complete control of the litigation, and where no one other than the parties to the suit have an interest in the subject matter, they are bound by the decision regardless of the technical distinctions involved in the use of the term 'privity.'" *Id.* (cleaned up). For example, a corporation that was a party to one lawsuit was in privity with the president of the corporation in a second lawsuit where the president owned or controlled the corporation's stock at the time of the prior litigation. *Id.* (summarizing *C.I.S., Inc. v. Kann*, 76 Ill.App.3d 109 (2d Dist. 1979)). Campbell's ownership interest in Northampton and his role as president of the Association does

11

not neatly fit into this category. [60] at 9. Campbell was never a party to the state-court proceeding in his capacity as sole owner of Northampton or as president of the Association. Still, the privity inquiry is case-specific, and the record reveals a close alignment between the Association's legal interest in the state-court litigation and Northampton's legal interest in the condominium property in this case. Both Northampton and the Association share the same interest in establishing the Bank's knowledge and failure to disclose information about property defects causing water leaks. *Cf. Agolf, LLC v. Vill. of Arlington Heights*, 409 Ill.App.3d 211, 220 (1st Dist. 2011) ("[P]rivity clearly exists between parties who share a mutual or successive relationship in property rights that were the subject of an earlier action."). Northampton seeks damages for purchasing units at an artificially inflated price and for costs "remedying the defects that the Bank knew of prior to the sale and concealed from Northampton." [32] ¶ 128. The Association sought damages for costs and expenses of repair work to the property in the state-court litigation. *See, e.g.*, [52-2] ¶¶ 100, 120–21.

Particularly relevant to this case is that Campbell participated in the state-court litigation against the Bank. The Association submitted an affidavit from Campbell in his capacity as the President of the Board of Directors stating that the 2009 reports demonstrate the repairs were a "stop gap measure." [1-3] at 10–11 (rejecting affidavit). In *Agolf, LLC v. Village of Arlington Heights*, the court found privity between a prior party and the non-party plaintiff where the "plaintiff undoubtedly knew about [the prior] litigation from its inception and knew the

12

contents of its legal assertions against defendant." 409 Ill.App.3d at 221. There, the plaintiff's president and manager had testified at the prior plaintiff's trial against the same defendant. *Id.* Similarly, Campbell participated in the state-court litigation against the Bank from the onset of litigation and proffered an affidavit on the Association's behalf. *Cf.* Restatement (Second) of Judgments § 39, cmt. a (1982) ("A person who assumes control of litigation on behalf on another has the opportunity to present proofs and argument on the issues litigated. Given this opportunity, he has had his day in court and should be concluded by the result.").[3]

The Association's pleadings and arguments demonstrate that it adequately represented Northampton's legal interest in establishing the Bank's liability for knowledge and concealment of property defects. *See Progressive Land Devs.*, Inc., 151 Ill.2d at 297 (looking to the "extensiveness of the pleadings and the briefing" to determine whether a nonparty's interest was adequately represented at the prior proceeding). The Association's allegations and assertions extended to the Bank's representations made in connection with the property sale. *See Fountain Square on the River Condo. Ass'n*, 2024 IL App (2d) 230076-U, ¶ 27 (noting the Association's allegation that "defendants concealed the defects in order to profit from the sale of the building to Northhampton [*sic*] by withholding the existence and extent of the

---

[3] Section 39 of the Restatement (Second) of Judgments states: "A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." This section applies to issue preclusion, *see cmt. b*, but the identity of interest inquiry under Illinois law is the same under either claim or issue preclusion. *See John J. Rickhoff Sheet Metal Co.*, 394 Ill.App.3d at 559 ("[R]egardless of which of the two doctrines applies, only privity is in dispute, and privity is the same under either doctrine.").

defects"), ¶ 38 (rejecting as conclusory that defendants' "failures and omissions were 'implemented for the purpose of maximizing… profits in the development and sale of the Complex and units in the Association and to avoid their share of assessment responsibility for reserves and repairs, all to the detriment of the Association"). In sum, Ken Campbell's sole ownership of Northampton, his dual role as President of the Association, his active involvement in the state-court litigation, as well as the nature of the Association's pleadings and arguments against the Bank are sufficient to establish privity between Northampton and the Association. All three requirements for claim preclusion are satisfied.

Though the doctrine of res judicata receives "liberal construction and should be applied without technical restrictions… [it] should not be applied so rigidly as to defeat the ends of justice." *McHenry Sav. Bank v. Moy*, 2021 IL App (2d) 200099, ¶ 38. Courts do not apply the doctrine if it would be "fundamentally unfair or would create inequitable or unjust results," keeping in mind the doctrine is "intended to be used as a shield, not a sword." *Id.* Here, the Bank invokes claim preclusion so that it does not have to relitigate the state court's judgment freeing it from accusations of fraud. *See Agolf*, 409 Ill.App.3d at 227 (permitting plaintiff to pursue lawsuit would "essentially condemn defendant to relitigate issues already decided in all potential suits filed by anyone with a property interest"). The ends of justice favor preclusion.

Claim preclusion bars Northampton's counterclaim for breach of contract. The counterclaim also fails as a matter of law. Northampton's complaint includes allegations of fraudulent inducement, breach of implied duty of good faith and fair

14

dealing, and breach of contract based on a duty to disclose certain documents under the Illinois Condominium Property Act. [32] ¶¶ 85–86, 104, 112–29. Those are all different claims under Illinois law with claim-specific elements. Fraudulent concealment requires a plaintiff to allege the defendant concealed a material fact that defendant had a duty to disclose. *See Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 500 (1996). A duty to disclose only arises under specific contexts, typically from a fiduciary relationship. *See id.* It does not ordinarily extend to business transactions. *Ransom v. A.B. Dick Co.*, 289 Ill.App.3d 663, 672 (1st Dist. 1997) ("[O]rdinarily in a business transaction each party guards his own interests and no fiduciary duty exists."). Northampton does not allege a fiduciary or other special relationship with the Bank. Additionally, Illinois courts do not view the covenant of good faith and fair dealing as an "independent source of duties for the parties to a contract." *Fox v. Heimann*, 375 Ill.App.3d 35, 42 (1st Dist. 2007). The "duty" is "essentially used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions." *Id.*

In any case, Northampton clarifies in its response brief that it only alleges a breach of contract for nondisclosure under Sections 22(a) and 27(a) of the contract.[4] [60] at 11–12. "In stating a claim for breach of contract, only a duty imposed by the terms of the contract can give rise to the breach." *Martin v. State Farm Mut. Auto.*

---

[4] Generally, a plaintiff may not amend their complaint through their response brief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Because the Bank adequately responded to Northampton's newly raised allegations in reply, I exercise discretion to construe Northampton's allegations in light of its response brief.

*Ins. Co.*, 348 Ill.App.3d 846, 853 (1st Dist. 2004). Whether a contract imposes a particular legal duty is a question of law. *Fox*, 375 Ill.App.3d at 44.

Section 22(a) titled "Condominium Disclosures and Other Matters" provides, [52-1] at 17:

> Seller shall not be required to comply with the disclosure requirements of Sections 22 or 22.1 of the Illinois Condominium Property Act, and Purchaser shall obtain whatever condominium disclosure information if [*sic*] may desire through its "due diligence" during the Inspection Period.

Section 27 titled "Inspection Period and Right of Entry" provides, [52-1] at 20 (emphasis in original):

> **(A) WITHIN THREE (3) CALENDAR DAYS FROM THE DATE OF THIS CONTRACT SELLER SHALL DIRECT ITS REPRESENTATIVES TO PROVIDE THE FOLLOWING ITEMS TO THE BUYER: A CURRENT RENT ROLL INCLUDING ANY DEPOSITS AND ARREARS, MONTHLY OPERATING STATEMENTS FOR THE LAST TWO YEARS, COPIES OF RENTAL AGREEMENTS, LEASES, INSURANCE POLICIES, COPIES OF CONDOMINIUM DOCUMENTATION INCLUDING MINUTES OF CONDOMINIUM MEETINGS FOR THE LAST TWO YEARS.**

> (B) During the period ending on the sixtieth (60th) day following the date of this Contract (the "**Due Diligence Period**"), Purchaser is granted the opportunity to physically inspect and to cause one or more inspectors, appraisers, engineers, employees or other contractors of Purchaser to physically inspect the Premises…

Northampton argues that the Bank had a duty to disclose all third-party engineering reports as: (1) "copies of condominium documentation including minutes of condominium meetings for the last two years" and (2) "whatever condominium disclosure information it may desire through its 'due diligence' during the Inspection Period." [60] at 11–13.

Neither provision of the contract imposed a duty on the Bank to disclose the engineering reports at issue. Northampton acknowledges that Section 22(a) relieves the Bank of the duty to disclose documents under the Illinois Condominium Property Act, but it points to the second clause as mandating disclosure. The second clause of the sentence explains that instead of through the Illinois Condominium Property Act, "Purchaser shall obtain whatever condominium disclosure information if [*sic*] may desire through its 'due diligence' during the Inspection Period." [52-1] at 20. Although there is no limitation on the type of condominium disclosure information that Northampton could request, Section 22(a) does not impose an obligation on the Bank to produce specific documents, like the engineering reports. The section merely directs Northampton to do its due diligence. Northampton sought the engineering reports and may view the Bank's disclosure limited to the most recent December 2009 report as incomplete, but Section 22(a) does not give Northampton the relief it seeks. Nothing in Section 22(a) required the Bank to affirmatively disclose the predecessor reports.

Section 27(a) imposes an affirmative disclosure requirement on the Bank to provide, among other things, "copies of condominium documentation including minutes of condominium meetings for the last two years." The Bank points out that (1) engineering reports are not specified in this category of required documents and (2) reports from 2009 would fall outside of the two-year time period. [61] at 5. Northampton reads the two-year time limit to apply only to "minutes of condominium meetings" rather than extending to "copies of condominium documentation." [60] at

17

14. That's an unreasonable stretch. The two-year limitation is naturally read as applying to the whole clause, i.e. to "copies of condominium documentation including minutes of condominium meetings." *Cf. Facebook, Inc. v. Duguid*, 592 U.S. 395, 403 (2021) (when a modifier immediately follows a "concise, integrated clause," it should be read to apply to the whole of the cohesive preceding clause). Northampton points out that the Bank produced the December 2009 report, so the Bank clearly believed it was required to produce documents outside of the two-year time limitation. The Bank's production of the 2009 report (perhaps as part of its cooperation with Northampton's due diligence under Section 22(a)) doesn't mean engineering reports were considered "copies of condominium documentation," and absent any indication in the contract that they were, the Bank was not contractually required to disclose those under Section 27(a).

Because neither section of the contract that Northampton points to created a contractual duty for the Bank to disclose the engineering reports at issue, the Bank did not breach the contract as a matter of law.

18

## IV. Conclusion

First American Bank's motion for judgment on the pleadings, [51], is granted.

Northampton's counterclaim for breach of contract is dismissed with prejudice.[5]

ENTER:

Manish S. Shah
United States District Judge

Date: May 14, 2025

---

[5] Dismissal with prejudice is proper where the moving party raises the affirmative defense of res judicata through a Rule 12(c) motion for dismissal on the merits. *See Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010).